COLLINS & AIKMAN
CORPORATION, Plaintiff,

v.

CARPOSTAN INDUSTRIES,
INC., Defendant.

Civ. A. No. 4:89–1875–15.

United States District Court,
D. South Carolina,
Florence Division.

Sept. 1, 1989.

James H. Ritchie, Jr., Howell & Spears, Spartanburg, S.C., Steven B. Pokotilow, Laura E. Goldbard, New York City, for plaintiff.

Ralph Bailey, Bailey & Hardaway, Greenville, S.C., for defendant.

## ORDER

HAMILTON, District Judge.

On July 26, 1989, plaintiff, Collins & Aikman Corporation, instituted this action alleging that defendant, Carpostan Industries, Inc., infringed its copyright interest by producing an upholstery fabric design substantially similar to one produced by plaintiff. 17 U.S.C. §§ 101 *et seq.* On the same day, plaintiff filed a motion for a preliminary injunction, which the court heard on August 18, 1989. At the conclusion of the August 18, 1989 hearing, both parties consented to consolidating the hearing on plaintiff's application for a preliminary injunction with the trial on the merits as to the question of liability. Rule 65(a)(2), Fed.R.Civ.Proc.;[1] Transcript ("Tr.") at 150–51.

After receiving the testimony, carefully considering the entire record, weighing the credibility of the witnesses, reviewing the exhibits, and studying the applicable law, this court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. The court notes that to the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

### I. *Findings of Fact*

#### A. Background

1. Plaintiff is a Delaware corporation having its principal place of business in New York, New York.

2. Defendant is a South Carolina corporation having its principal place of business in Lake View, South Carolina.

3. Plaintiff and defendant both design and manufacture upholstery fabrics, which they sell in competition with each other to furniture manufacturers. Tr. at 82, 146.

4. In the early part of 1988, Carrie Kramer, a representative of Vanguard Furniture Company, provided Willis Scott Glidden, Director of Product Development for the Mastercraft Division of Collins & Aikman, with a piece of imported hand-woven silk suiting used in furniture upholstery and asked him to create the same silk look in a repeatable fabric design capable of machine manufacture. Glidden Affidavit ("Aff.") at para. 4; Tr. at 60.

5. According to Mr. Glidden, the piece of fabric that Ms. Kramer gave to him looked similar to Defendant's Exhibit 1, which is a sample of hand-woven silk suiting used in upholstering furniture. Tr. at 60; Glidden Aff. at para. 3.

6. In February of 1988, Mr. Glidden, using the piece of genuine silk suiting he received from Ms. Kramer as an "inspiration," created the "APPARITION" design, Defendant's Exhibit 7, for plaintiff as work for hire. Glidden Aff. at para. 3; Tr. at 55, 60.

7. On February 24, 1988, plaintiff duly registered its copyright on APPARITION in the United States Copyright Office under registration number VA 323–788. Defendant's Exhibit ("Exh.") 12. The court finds that APPARITION is an original design created by plaintiff and that the copyright subsisting therein is valid. Moreover, defendant expressly acknowledged that they are not challenging the ownership and validity of plaintiff's copyright in APPARITION. Tr. at 27, 30–31.

8. Plaintiff first introduced APPARITION at the April, 1988 furniture market in High Point, North Carolina as an exclusive design for Vanguard Furniture Company. Tr. at 72. The APPARITION fabric design was confined to Vanguard from April, 1988 through October, 1988. Major Aff. at para. 4. Due to the success of the APPARITION design, it was included in plaintiff's regular line for the October, 1988 High Point market. Tr. at 73.

#### B. Defendant's Actions

9. At the October, 1988 High Point furniture market, Mr. Lawrence Hugh Hollingsworth, defendant's Vice President of

---

1. Rule 65(a)(2) of the Federal Rules of Civil Procedure provides express authority for consolidating the hearing of an application for a preliminary injunction with a trial on the merits.

Design and Development, met with Ms. Maree Hanson, Merchandise Manager for Bauhaus Designs Canada, Ltd. Ms. Hanson, who was one of defendant's regular customers, asked Mr. Hollingsworth to produce for her an upholstery fabric having the very popular hand-made silk suiting look. Hanson Aff. at para. 3; Tr. at 113–15, 117; Hollingsworth Deposition ("Depo.") at 24. Ms. Hanson specifically requested that Mr. Hollingsworth use a light, shiny yarn from the existing Carpostan fabric "RICKSHAW" and a nubby black yarn characteristic of silk suiting fabrics to create an upholstery fabric with a linear appearance or flow characteristic of the silk look used in apparel fabrics. Hanson Aff. at para. 4; Tr. at 116–17, 122–24; Hollingsworth Depo. at 25–26. Ms. Hanson also requested that the fabric be produced as soon as possible and that the price be kept to $3.00 a yard. Tr. at 118–19.

10. During this conversation, Mr. Hollingsworth decided that he could achieve the look Ms. Hanson desired by using the color and type yarns she had selected with the warp and weave of "BANCROFT," a fabric design defendant had developed in 1984. Tr. at 118; Hollingsworth Depo. at 25–26. After the High Point furniture market, Mr. Hollingsworth returned to defendant's facility in Lake View, South Carolina, where on October 28, 1988, he physically created the fabric design whose composition he and Ms. Hanson had decided upon earlier. Tr. at 121, 131; Hollingsworth Depo. at 32. Mr. Hollingsworth called his design "SWANKY," and on November 1, 1988, he shipped the original sample of SWANKY to Bauhaus Designs, Canada, Ltd., Ms. Hanson's employer, for approval. Tr. at 121.

11. Thereafter, Bauhaus Designs Canada, Ltd. began marketing furniture covered with SWANKY. During the January, 1989 Dallas furniture market, Mr. Glidden, plaintiff's Director of Product Development, saw a fabric similar to APPARITION in a private showroom of J.C. Penney and learned that it was defendant's SWANKY design. Tr. at 55; Glidden Aff. at para. 6. Plaintiff's counsel then informed defendant by letter that its SWANKY design was an infringement of plaintiff's copyright inter-est in APPARITION. Tr. at 77; Plaintiff's Exh. 1. Plaintiff's counsel demanded that defendant, among other things, discontinue producing its SWANKY design. When defendant failed to do so, plaintiff brought this copyright infringement action.

12. Mr. Hollingsworth first became aware of plaintiff's APPARITION design some time during the October, 1988 High Point furniture market. Tr. at 121; Hollingsworth Depo. at 26. He saw APPARITION on furniture in various showrooms, and he saw a swatch of APPARITION obtained by one of defendant's sales representatives. Tr. at 121, Hollingsworth Depo. at 26–27. This court finds, however, that Mr. Hollingsworth mentally created SWANKY during his discussion with Ms. Hanson, which took place *before* he saw APPARITION, and that APPARITION played no part whatsoever in the creation of his SWANKY design. Tr. at 121, 125–26. This finding is, in part, premised on the credible testimony of Mr. Hollingsworth that he did not see APPARITION before creating SWANKY. Tr. at 142–43. Upon arriving at the October, 1988 High Point furniture market, Mr. Hollingsworth went directly to the Bauhaus showroom to visit with Ms. Hanson since Bauhaus was one of defendant's most important customers. *Id.* Ms. Hanson did not have a sample of APPARITION with her when she asked Mr. Hollingsworth to develop an upholstery fabric with the silk suiting look. Hanson Aff. at para. 5.

Mr. Hollingsworth combined yarns and styles that had been in defendant's fabric library for years to achieve the silk suiting look of SWANKY. Using numerous demonstrative exhibits, Mr. Hollingsworth went to great lengths in educating the court on how a fabric designer uses particular warps, weaves, yarns, and colors to achieve various visual effects. *See* Tr. at 122–41; Defendant's Exh. 14–21. The court finds his testimony highly credible in all respects and finds that he did not copy APPARITION in creating SWANKY.

13. In addition to Mr. Hollingsworth's testimony, there is other, circumstantial evidence which also leads the court to find

that SWANKY is not a copy of APPARITION. First, defendant's SWANKY looks more similar to the samples of genuine hand-made silk suiting in the record than does plaintiff's APPARITION. *Compare* Defendant's Exh. 11 (SWANKY) and Defendant's Exhibit 7 (APPARITION) *with* Defendant's Exh. 1 and 13 (samples of genuine silk suiting used in upholstery).[2] This is persuasive evidence that defendant did not attempt to copy plaintiff's fabric design, but, instead, attempted independently to achieve the popular silk suiting look embodied in Defendant's Exhibits 1 and 13.

14. The court also finds that, although SWANKY and APPARITION both possess characteristics common to the silk suiting look and would look "substantially similar" to the ordinary observer if placed on a piece of furniture, there are significant differences in the design of these two fabrics which are further evidence of independent creation. The APPARITION design has "a 3⅜" repeat from selvage to selvage. Along the length of the fabric, the repeat is ¼" using slubby non-uniform filling yarns." Glidden Aff. at para. 4; *see also* Tr. at 63. APPARITION has 144 yarns in each 3⅜" warp repeat and six yarns in the filling. In stark contrast, SWANKY has a ¾" warp repeat (to APPARITION'S 3⅜"), 16 yarns in each warp (to APPARITION'S 144), and two yarns in the filling (to APPARITION'S six). Tr. at 63. Therefore, to the trained eye, APPARITION and SWANKY have a very different pattern or design. Tr. at 111, 129, 135, and 141.

15. In summary, the overwhelming evidence in this record supports the court's finding that the designers of APPARITION and SWANKY worked *independently* to achieve the same goal: to produce a repeatable fabric design that gives the appearance of hand-made silk suiting at a fraction of the cost of genuine silk. First, Mr. Hollingsworth's testimony of the mental process he went through in designing SWANKY was highly persuasive. Second, although APPARITION and SWANKY

would appear substantially similar to an ordinary observer if placed on a piece of furniture, their similarity is readily explainable by the attempts of both parties to achieve the same look. Third, defendant's attempt to achieve the look of genuine silk suiting, as embodied in Defendant's Exhibits 1 and 13, was more successful than plaintiff's, which is evidence that defendant did not copy plaintiff's APPARITION design. And last, there are significant differences in the design of these two fabrics which do not appear to be mere trivial changes used to disguise piracy.

## II. *Conclusions of Law*

This court has jurisdiction over the parties and the subject matter of this action and venue is proper. 17 U.S.C. §§ 101 *et seq.;* 28 U.S.C. §§ 1331, 1338(a), and 1400(a).

■ In order to make out its case of copyright infringement, plaintiff must prove two elements: ownership of a valid copyright by the plaintiff and copying by the defendant. *Keeler Brass Company v. Continental Brass Company,* 862 F.2d 1063 (4th Cir.1988) (citing 3 *M. Nimmer On Copyright* § 13.01 (1988) (*"Nimmer"*)). Under 17 U.S.C. § 410(c), plaintiff's copyright registration certificate filed with the court constitutes *prima facie* evidence of plaintiff's ownership of a valid copyright in its APPARITION fabric design. *See Jobete Music Company, Inc. v. Media Broadcasting, Corporation,* 713 F.Supp. 174, 177 (M.D.N.C.1988); *see generally* 3 *Nimmer* § 13.01[A]. The court also notes that defendant did not attempt to rebut plaintiff's *prima facie* case of copyright ownership. Therefore, plaintiff's ownership of a valid copyright in APPARITION is established for purposes of this case. The focus of this dispute is on whether, in developing its own upholstery fabric with the silk suiting look (i.e., SWANKY), defendant copied plaintiff's APPARITION design.

2. When the court asked Mr. Glidden to make this comparison during his testimony, Mr. Glidden said he did not believe that SWANKY looked more like Defendant's Exhibit 1 than

APPARITION. Tr. at 69–70. The court finds his testimony in this regard incredible and clearly erroneous.

In this case, as is true in most copyright infringement disputes, plaintiff failed to produce direct evidence of copying by the defendant. Courts, however, have adopted a two-pronged circumstantial proof scheme which, if met, creates a rebuttable presumption of copying. *See Keeler Brass*, 862 F.2d at 1065; *M. Kramer Manufacturing Company v. Andrews*, 783 F.2d 421, 445 (4th Cir.1986). Under this proof scheme, plaintiff can create a presumption of copying by proving "access and substantial similarity." 3 *Nimmer* § 13.01[B] at 13–6; *Keeler Brass*, 862 F.2d at 1065; *Andrews*, 783 F.2d at 445. Defendant may then produce evidence rebutting the presumption of copying by showing, for example, that it independently created the allegedly infringing design. *See, e.g., Keeler Brass*, 862 F.2d at 1066–67; *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir.1982); *see also Novelty Textile Mills v. Joan Fabrics Corporation*, 558 F.2d 1090, 1092 n. 2 (2d Cir.1977). "If the defendant meets his burden of going forward by successfully rebutting the presumption of copying, ... the function of the fact finder then is to weigh all the evidence, keeping in mind that the plaintiff has the ultimate burden of persuading it that the defendant copied the material." *Keeler Brass*, 862 F.2d at 1066.

Defendant, through the testimony of Lawrence Hollingsworth, has admitted to having access to plaintiff's APPARITION design; therefore, that element of the circumstantial proof scheme of copying is established for purposes of this case.

The court must now turn to the "substantial similarity" prong of the circumstantial proof scheme for copying. Under this prong, plaintiff must prove that its APPARITION design and defendant's SWANKY design are substantially similar. The "substantial similarity" determination is governed in this circuit, as in most, by the "ordinary observer" test set forth by Judge Learned Hand in *Peter Pan Fabrics, Inc. v. Martin Weiner Corporation*, 274 F.2d 487, 489 (2d Cir.1960). Judge Hand stated that there is substantial similarity where "the ordinary observer, unless he set out to detect the disparities [in two dress fabric designs], would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* In determining substantial similarity, Judge Hand instructed that "one should consider the uses for which the design is intended, especially the scrutiny that observers will give to it as used." *Id.*

Finally, it is important to keep in mind that the substantial similarity required for infringement must be substantial similarity of *expression* (which can be copyrighted), not substantial similarity of ideas (which cannot be copyrighted). *See Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself."). Plaintiff in this action readily concedes, as it must, that it cannot copyright the *idea* of producing a repeatable machine-made upholstery fabric which gives the visual impression of hand-made silk suiting. Only plaintiff's particular *expression* of this *idea* may be protected and only it may be infringed. *See, e.g., Original Appalachian Artworks*, 684 F.2d at 829 n. 11 ("OAA may not copyright the idea of a soft-sculpture doll, nor even the idea of a soft-sculpture 'human baby' doll. Rather, its copyright can only extend to the peculiar expression of the idea embodied in its 'Little People' dolls.").

What the court must determine at this stage then is whether an ordinary observer would find APPARITION and SWANKY to be substantially similar *expressions* of the *idea* of producing a repeatable fabric design with the visual impression of hand-made silk suiting. The court finds substantial differences in the construction of these two fabric designs and slight differences in visual impression. *See* Findings of Fact 13 & 14. It must conclude, however, that if the two fabrics were placed on furniture, they would have the same aesthetic appeal to an ordinary observer and an ordinary observer would be disposed to overlook the differences in design. Accordingly, the court finds that

plaintiff has established substantial similarity under the "ordinary observer" test. *See* Finding of Fact 14.

Having satisfied both prongs of the circumstantial evidence scheme (i.e. access and substantial similarity), plaintiff shifted the burden of *production* to defendant to adduce evidence rebutting the presumption of copying. *Keeler*, 862 F.2d 1066–67. Defendant, by introducing the testimony of Lawrence Hollingsworth, met its burden of producing evidence of independent creation sufficient to rebut the presumption created by plaintiff's *prima facie* case. *See* Findings of Fact 13–15.[3] Therefore, plaintiff's *prima facie* showing only permits, but does not require, an inference of copying. *Keeler Brass*, 862 F.2d at 1066–67. At this stage, the court's task, as a fact finder, is to weigh all of the evidence and determine if plaintiff has met its ultimate burden of persuasion on copying. 862 F.2d at 1067. The court finds that it did not.

As discussed above, plaintiff established a *prima facie* case of copying by showing access and substantial similarity. Several facts, however, undercut the weight of plaintiff's case. First, the substantial similarity which does exist between these two fabric designs is explainable by something other than copying: both designs are an attempt to achieve the same silk suiting look, as embodied in Defendant's Exhibits 1 and 13. Thus, similarity in appearance of the two fabrics was unavoidable and, under the evidence presented in this case, more likely the result of independent attempts to simulate the same look than the result of copying.

Second, defendant's attempts to achieve the silk suiting look, as embodied in Defendant's Exhibits 1 and 13, in a repeatable fabric design was more successful than plaintiff's, which is persuasive evidence that defendant did not copy plaintiff's APPARITION design. *See* Finding of Fact 13.

Third, significant dissimilarities exist between the design of APPARITION and SWANKY, *see* Finding of Fact 14, such that the court is convinced they are not merely the result of "a studied effort to make minor distinctions between the two works." *Andrews*, 783 F.2d at 446.

Lastly, and most importantly, the designer of SWANKY, Lawrence Hollingsworth, testified that he did not copy plaintiff's APPARITION design. He indicated that in creating SWANKY he combined one of his own earlier fabric designs (BANCROFT) with color and yarn specifications made by his customer, Maree Hanson. Using numerous exhibits to help explain how fabric designs are created, Hollingsworth testified in great detail about the mental process he went through in choosing the warps and weaves for his SWANKY design. *See* Finding of Fact 12. The court finds Hollingsworth's version of how he created SWANKY highly credible and dispositive on the issue of copying.

## CONCLUSION

After examining all the evidence, weighing the credibility of the witnesses, studying the applicable law, and after considering the arguments of counsel, the court finds that plaintiff failed to prove by a preponderance of the evidence that defendant copied its APPARITION design. Therefore, the court must also find that plaintiff failed to establish that defendant infringed its copyright. A judgment, therefore, shall be entered in favor of defendant.

IT IS SO ORDERED.

---

**3.** Notably, " 'independent creation' is not an affirmative defense. The defendants, therefore, do not have the burden of persuasion for independent creation. Evidence of independent creation simply tends to prove ... that the design was not copied." *Keeler Brass*, 862 F.2d at 1066.