John P. QUINN, Plaintiff,

v.

CITY OF DETROIT, Defendant.

Civil Action No. 96–40291.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 12, 1997.

---

Marjory G. Basile, Miller, Canfield, Paddock & Stone, Detroit, MI, for Defendant.

***MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO STRIKE AFFIDAVITS, DENYING DEFENDANT'S FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT***

GADOLA, District Judge.

On August 9, 1996, John P. Quinn ("Quinn") filed this action against the City of Detroit ("City") seeking monetary damages

for the City's alleged infringement of his copyright to a computer program entitled the Litigation Management System/Claims Management System. Presently before this court is the City's motion for summary judgment and Quinn's motion for partial summary judgment. Also before this court is the City's motion to strike Quinn's affidavits. For the following reasons, the City's motion for summary judgment will be denied, Quinn's motion for partial summary judgment will be granted and the City's motion to strike affidavits will be denied.[1]

## FACTS

John P. Quinn was hired as a staff attorney by the Law Department for the City in 1985. After a brief hiatus, Quinn returned to the City as a staff attorney and later became Supervising Assistant Corporation Counsel on or about January 15, 1991. As Supervising Assistant Corporation Counsel, Quinn was responsible for managing the cases assigned to him personally and the cases assigned to the attorneys he supervised. Quinn supervised eight to 10 attorneys.

According to Quinn, when he was hired as a supervisor, the Law Department was doing a less than adequate job of meeting its deadlines. Quinn believed the way to ensure that attorneys met deadlines and to otherwise improve the management of cases was to use a computer program to assist with such tasks. Quinn inquired of Sharon McGinley, a consultant hired to assist the Law Department in selecting software and training people to use software, as to whether the Law Department had any computer system that Quinn could use for data management to track cases. McGinley indicated that an off-the-shelf data management software package entitled Professional File would do just that.[2]

Upon the advice of McGinley, Quinn purchased his very own copy of Professional File, installed the software on his computer at home and educated himself about it. Quinn soon learned that Professional File was not only a data management program, but also a fourth generation programming application, meaning it could be used to design other software packages. Using Professional File, Quinn designed a software program which constitutes the basis of this lawsuit entitled Litigation Management System/Claims Management System ("LMS").

After creating LMS, Quinn downloaded it onto the Law Department's computer system and used it to track deadlines and perform other functions necessary to manage litigation. · Eventually, the majority of the employees in the litigation section, as well as personnel in other sections of the Law Department of the City, began using LMS to assist them in the performance of their duties.

Quinn incorporated into LMS a function that notified its users of his ownership of the program.[3] Toward the end of 1995, however, it became apparent to Quinn that the Law Department had assumed a proprietary interest in LMS, notwithstanding Quinn's claim to ownership of the same. On or about November 20, 1995, Quinn therefore wrote a memorandum to Phyllis James, corporation counsel for the City, withdrawing his permission for its use of LMS and instructing the City to promptly inform all its employees that they must immediately discontinue use of LMS. In 1995, Quinn also retained an attorney, William J. Schramm, to register LMS in his name with the United States Copyright Office.

On or about February 9, 1996, Schramm filed for Quinn an Application for Certificate of Registration with the U.S. Copyright Office. A Certificate of Registration declaring Quinn the author of LMS was thereafter obtained effective February 14, 1996.

Ultimately, on August 9, 1996, Quinn filed the instant action against the City alleging

---

1. Pursuant to Local Rule 7.1(e)(2), this court has decided to dispense with oral argument and decide the motion based upon the parties' written submissions.

2. At the time Quinn made such an inquiry of McGinley, the City allegedly did not possess a copy of Professional File. McGinley intended to

purchase Professional File in the future for the City.

3. Actually, the program only notified users of LMS of Quinn's ownership if the users selected the appropriate item from the program's menu.

that the City had infringed his copyright by making unauthorized copies of LMS and by continuing to use LMS after Quinn withdrew his permission to use LMS. On August 28, 1997, approximately one year after Quinn instituted the action, the City filed the present motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The City urges this court to dismiss Quinn's claim of copyright infringement for several reasons. First, the City insists that Quinn's claim for infringement must be dismissed because Quinn does not own a copyright to LMS. The City asserts that it owns LMS pursuant to the work made for hire provisions of the Copyright Act of 1976. Second, the City argues that Quinn's claim for infringement must be dismissed because Quinn does not have a valid copyright to LMS since he did not comply with the statutory formalities required to register his copyright and/or because LMS is not a copyrightable work. Third, the City claims that Quinn's claim for statutory damages and attorney's fees is meritless under the plain language of 17 U.S.C. § 412.

Notwithstanding the City's protestations, Quinn maintains that his claim of copyright infringement should survive. First, Quinn contends the work made for hire provisions of the Copyright Act are inapplicable here, and therefore the City does not own the copyright to LMS pursuant to them. In fact, Quinn requests that this court enter summary judgment in favor of him on this issue.

Quinn also contends that he has a valid copyright because he has complied with all statutory formalities in registering LMS with the United States Copyright Office and because LMS is copyrightable. Lastly, Quinn argues that he is entitled to statutory damages and attorney fees, but he encourages this court to defer ruling on this issue until a later time in these proceedings.

## ANALYSIS

### I. City's Motion to Strike Affidavits

■ On November 14, 1996, the City filed a motion to strike various affidavits Quinn submitted to this court both in support of his motion for partial summary judgment and in opposition to the City's motion for summary judgment. Specifically, the City moves to strike: (1) the affidavit of plaintiff John P. Quinn dated September 29, 1997, (2) the affidavit of William J. Schramm dated September 28, 1997, and (3) the affidavit of Joseph J. Toland dated October 8, 1997.[4] The motion to strike is extremely untimely. The motion to strike was filed on the eve of the hearing regarding the summary judgment motions,[5] and was filed in excess of one month after the affidavits were submitted to this court. Indeed, the motion to strike was filed, without warning, after the court had performed the majority of its research regarding the various summary judgment motions.[6] Since the motion was untimely filed, it will not be considered.[7]

---

4. Although the City in its motion to strike did not identify the affidavits to which it objects, the City did attach three affidavits as exhibits to its motion to strike. This court will assume that the three affidavits attached as exhibits to the motion to strike are the three affidavits to which the City is objecting.

5. The hearing on the summary judgment motions was originally scheduled for November 19, 1997. It was adjourned upon stipulation of the parties until November 26, 1997.

6. As opposed to actually filing the motion to strike well in advance of the hearing date, the City could have at the very least notified the court and opposing counsel of its intent on filing the motion to strike.

7. Assuming arguendo, that the motion was timely filed and granted, it still would not change this court's disposition of the various summary judg-

ment motions. First, were this court to disregard the Toland affidavit, it still would find a genuine issue of material fact as to whether Quinn's work is copyrightable which is the issue to which Toland's affidavit speaks. Second, were this court to ignore the particular portion of Quinn's affidavit the City believes contradicts his sworn earlier testimony, this court would still conclude that LMS is not a work made for hire because it was created outside the scope of Quinn's employment. The City argues that Quinn has offered conflicting testimony as to whether his development of LMS was motivated by his employment. Yet, whether development of LMS was motivated, at least in part, by Quinn's employment is only one of three criteria which must be met by the City in showing that LMS was not within the scope of Quinn's employment, and the City has not shown that the other two criteria are satisfied. Lastly, were this court to ignore the Schramm affidavit, this court would still conclude that Quinn properly filed

## II. The City's Motion for Summary Judgment and Quinn's Motion for Partial Summary Judgment

### A. Legal Standard

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that there is a genuine issue for trial." *First National Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if appropriate shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton*, 24 F.3d 823, 826–27 (6th Cir. 1994).

### B. Who is the OWNER of LMS—Quinn or the City?

In order to succeed on his claim of copyright infringement, Quinn must show the following: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.[8] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1295–96, 113 L.Ed.2d 358 (1991), *Johnson v. Jones*, 921 F.Supp. 1573 (E.D.Mich.1996), *Marshall & Swift v. BS & A Software*, 871 F.Supp. 952 (W.D.Mich. 1994). In the instant case, there is a presumption that Quinn owns the copyright to the work at issue because he obtained a Certificate of Registration from the United States Copyright Office for LMS within five years of completing the same. *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 832 (10th Cir.1993).[9] The City

LMS with the United States Copyright Office for the reasons stated *infra* note 10.

**8.** The second element of an infringement claim may be proven by direct or circumstantial evidence. If the latter method is chosen, a presumption of copying is established if plaintiff shows: (1) the defendant had access to the copyrighted work, and (2) the two works are substantially similar. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir.1982). A defendant may rebut the presump-

tion of copying by presenting evidence of independent creation. *Id.*

This court expresses no opinion as to whether there is a genuine issue of material fact as to the second element because the parties have not adequately briefed this issue, if in fact they have briefed it at all.

**9.** The Certificate of Registration means that the Register of Copyrights has determined that LMS is copyrightable subject-matter and that all legal formalities of the copyright were met. 17 U.S.C. § 410(a).

bears the burden of rebutting the presumption of ownership which Quinn enjoys.

In an effort to rebut the presumption that Quinn owns LMS, the City argues that it owns LMS pursuant to the work made for hire provisions of the Copyright Act of 1976. For purposes relevant to this litigation, a work made for hire is a work: (1) prepared by an employee (2) within the scope of his or her employment. 17 U.S.C. § 101, 17 U.S.C. § 201(b).[10] An employer is deemed the author and owner of the copyright to a work made for hire, unless the parties have expressly agreed otherwise in writing. 17 U.S.C. § 201(b).

In this instance, it is uncontested that Quinn was an employee of the City at the time he created LMS, so the first factor of the work made for hire test is met. Also, it is uncontroverted that there is no writing designating Quinn the owner of LMS. Thus, the controversy lies over whether the second element of the work made for hire test is present, that being whether Quinn acted within the scope of his employment when he created LMS. The City insists that the answer to this question is "yes," while Quinn insists that it is "no."

In resolving the thorny issue of whether Quinn's work fits within his scope of employment, the Supreme Court has instructed this court to consult the common law of agency. *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 740, 109 S.Ct. 2166, 2172–73, 104 L.Ed.2d 811 (1989). Many lower courts have followed the test promulgated in the Restatement 2d of Agency, § 228 when deciding whether an employee's work falls within the scope of his or her employment. That test provides that a servant's work is within the scope of his or her employment:

> ... if: a) it is within the kind he is employed to perform; b) it occurs substantially within the authorized time and space limits; [and] c) it is actuated, at least in part, by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958). Notice that the test is conjunctive—all three prongs must be satisfied in order for a work to be deemed within the scope of the servant's employment.

Once again, it is the City's position that Quinn acted within the scope of his employment when he created LMS. The City analogizes the instant case to *Miller v. CP Chemicals, Inc.,* 808 F.Supp. 1238 (D.S.C.1992), in which the court found that a computer software program created by an employee was within that employee's scope of employment because all three elements of the *Restatement* test were present.

In *Miller,* plaintiff, David Miller, was a supervisor responsible for organizing and updating a laboratory at CP Chemical, Inc. *Id.* at 1240. Miller became concerned about the efficiency of performing manual calculations in the lab for in-process adjustments to one of CP's commercial products. *Id.* Faced with such a concern and in order to simplify his duties and increase his efficiency, Miller began writing a computer software program that computed complex mathematical calculations and eliminated the manual calculations previously used to make the required adjustments to this product. *Id.* At the behest of his supervisors, Miller then wrote other programs for different products. *Id.* The majority of the work done to create these program was performed by Miller on his computer at home outside of so-called "normal" working hours. *Id.*

Miller was subsequently terminated from his job at CP Chemicals, Inc. ("CP") and demanded that CP either return the computer programs he wrote or pay him for them. *Id.* at 1240, 1241. CP refused to do either and Miller then instituted a copyright infringement action against it. *Id.* at 1241.

Because Miller had failed to register for a copyright, a prerequisite to every claim of copyright infringement, the court summarily dismissed Miller's claim. *Id.* at 1242. Assuming arguendo, that Miller had registered

---

**10.** A "work made for hire" is also defined as a work specially ordered or commissioned for use as a contribution in one of nine areas and if the parties have expressly agreed in a written instrument signed by both parties that the work is considered a work for hire. 17 U.S.C. § 101. This definition is not applicable in this case because there exists no written instrument signed by Quinn and the City stating that LMS is a work for hire.

his programs, the court held that judgment for CP was nevertheless appropriate because it found CP, not Miller, to be the owner of the computer programs under the work made for hire provisions of the Copyright Act of 1976. Critical to this latter ruling was the court's determination that Miller's creation of the programs was within the scope of his employment.

Employing the three-pronged test set out at § 228 of the *Restatement (Second) of Agency, supra,* the court in *Miller* found that the first element of that test was met. In particular, the court concluded that Miller's writing of the computer programs was the kind of work he was hired to perform. Although Miller was not hired to create computer software, *per se,* his act of creating the software was "at least incidental to his job responsibilities" which included organization and maintenance of the laboratory. *Id.* at 1243.[11]

With regard to the second prong of the *Restatement* test (i.e., whether Miller's creation of the program was within the authorized time and space limits of his job at CP), the court found that prong satisfied. Specifically, the court found that Miller's work on the programs was within authorized time and space limits because Miller was employed with CP at the time he created the program. *Id.* The court found negligible the fact that Miller performed a substantial amount of the computer programming at home. *Id.*

As to the third prong of the *Restatement* test, that being whether the computer program was created, at least in part, for the benefit of CP, the court felt that there was no question that prong was met. *Id.* The court reasoned that since Miller created the program to simplify his job, it was in effect created with a purpose to serve his employer. *Id.*

While the City relies heavily on *Miller,* claiming that it is almost identical factually to the case at bar, Quinn relies on the case of *Roeslin v. District of Columbia,* 921 F.Supp. 793 (D.D.C.1995), claiming it is directly on point. The facts of *Roeslin* are as follows.

Roeslin was hired by the Department of Employment Services (D.O.E.S.) as a labor economist. *Id.* at 795. Roeslin's job description as a Labor Economist provided for his: (1) planning and carrying out projects for collecting detailed economic data; (2) evaluating and adapting necessary statistical methods for the preparation of data; (3) planning, organizing and operating programs (i.e.projects) for the collection, verification and presentation of data; (4) selecting the most appropriate statistical methods; (5) preparing estimates of employment and unemployment; and (6) preparing various reports and studies. *Id.* at 795.

In 1988, despite the fact that his supervisor advised him against it, and notwithstanding the fact that he had no computer programming skills, Roeslin began creating a computer software system ("DC–790") for his office. *Id.* at 796. Roeslin developed the system by purchasing a computer and software with his own funds. *Id.* He spent nearly 3000 hours outside the office creating DC–790. *Id.*

Roeslin subsequently learned that his employer was claiming a proprietary interest in his computer program. *Id.* After hearing of this, Roeslin approached his boss and "requested recognition by the District that he had independent ownership of the program, in exchange for which the District would be allowed free use and distribution of the software." *Id.* This was denied, and therefore Roeslin placed a copyright notice on his computer program screen, notified the District's Corporation Counsel and the Mayor's office of his copyright claim, and demanded that his employer stop using his system. *Id.* at 797. Roeslin also received a Copyright Registration. *Id.* The District continued to use his

---

11. *See* Restatement (Second) of Agency § 229 comment b (1958), which provides,

Acts incidental to *authorized* acts. An act may be incidental to an authorized act, although considered separately it is an entirely different kind of act. To be incidental, however, it must be one which is subordinate to or pertinent to an act which the servant is employed to perform. It must be within the ultimate objective of the principal and an act which it is not likely that such a servant might do. The fact that a particular employer has no reason to expect the particular servant to perform the act is not conclusive.

program and shortly thereafter Roeslin filed a copyright infringement action. *Id.*

The court held that the DC–790 System was created outside the scope of Roeslin's employment and was therefore not a work made for hire. *Id.* at 800. Addressing the three-factor test laid out at § 228 of the in the *Restatement*, the court found that not one of the factors were present.

In regard to the first factor, that being whether the program was of the kind of work Roeslin was hired to perform, the court concluded that it was not. Put simply, the court determined that computer programming was not the type of activity commonly done by labor economists. *Id.* at 798.[12]

As for the second factor, that is to say whether the work was completed within the authorized time and space limits of Roeslin's job, the court found that it was not so completed. Roeslin had spent over 3,000 hours outside the work place creating the program. *Id.*

In regard to the last factor, the court found that Roeslin's primary motivations were *not* to benefit his employer. Roeslin created the program to show his employer that it could be done, and to create job opportunities for himself. *Id.*

█ With the cases of *Miller* and *Roeslin* in mind, this court finds that LMS is not a "work made for hire." Unlike *Miller* and similar to *Roeslin*, not all the factors of the *Restatement* test are present, and in particular the first and second factors are lacking.

This court is of the opinion that the first factor of the *Restatement* test is absent here. In particular, this court finds that designing computer programs is not the type of work Quinn was hired to perform. Quinn was an attorney and a manager for the City's Law Department. His job description did not require him to create computer software, his employer never requested him to develop software, Quinn had no prior computer programming experience and in fact, the City had its very own computer programming department to do programming of the type

Quinn decided on his own to do. Moreover, the computer program developed by Quinn is not specific to the Law Department. It can be used in any law office, claims office or law department.

The instant case is similar to *Roeslin*, in which the court found that the development of a computer program by an employee hired as a labor economist was not the type of work that the labor economist was hired to perform since the employee was never asked to develop such a program, and was in fact, discouraged from so doing. *Roeslin*, 921 F.Supp. at 796. Also, this case is distinguishable from *Miller*, in which the court found the creation of a computer program to be within the scope of the plaintiff's employment. In *Miller*, the employee was specifically requested by his employer to computerize the quality control laboratory of which he was in charge, and the employee created computer programs which related directly to specific products manufactured by his employer. *Miller*, 808 F.Supp. at 1240.

Not only is the first *Restatement* factor lacking here, the second is also lacking. It is apparent to this court that Quinn created LMS outside the authorized time and space limits of his job with the City. Quinn designed LMS at home on his own time using a software package that he bought with his own funds. While Quinn may have spent numerous hours *installing, using and maintaining* LMS while at work, this is not time Quinn spent *creating* LMS and thus, not particularly relevant to the analysis. The case at hand is very similar to *Roeslin*, in which the court found that the plaintiff had created his program outside the authorized time and space limits of his job since he spent approximately 3000 hours creating the modules of his program at home, notwithstanding the fact that he spent some time testing and debugging various modules of his program during office hours. *Id.* at 798.

As for the third element, this court finds that it is present. No doubt, Quinn developed LMS, at least in part, to serve his

---

12. It is important to note that courts have relied heavily on an employee's job description in order to determine whether an employee's actions are

within the scope of employment. *City of Newark v. Beasley*, 883 F.Supp. 3, 7 (D.N.J.1995). In this case, there was no such job description available.

employer, the City. Yet, since the other two factors of the *Restatement* test are lacking here, and because all three factors of the *Restatement* test must be present in order for a work to be considered to be within the scope of the servant's employment, this court is led to the inescapable conclusion that Quinn's development of LMS was not work within the scope of Quinn's employment with the City.

In sum, this court finds Quinn's creation of LMS fell outside the scope of his employment. Accordingly, this court also finds that LMS is not a work made for hire. Summary judgment will be entered in favor of Quinn and adverse to the City on this issue.

### C. Does Quinn Hold A VALID Copyright to LMS?

The City also argues that Quinn's claim of infringement fails because Quinn does not possess a *valid* copyright to LMS. As with the issue of ownership, the City shoulders the burden of establishing invalidity of the copyright. Quinn's receipt of a Certificate of Registration constitutes *prima facie* evidence that he possesses a valid copyright to the work in question. 17 U.S.C. § 410(c); *Donald Frederick Evans & Assoc. Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 903 (11th Cir.1986) (the presumption of validity that accompanies a Certificate of Registration extends to the requirements of originality and susceptibility of the copyright). *See also Autoskill v. Nat'l. Educational Support Systems, Inc.,* 994 F.2d 1476, 1487 (10th Cir. 1993), *cert. denied,* 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993). *Bibbero Syst., Inc. v. Colwell Sys. Inc.,* 893 F.2d 1104, 1106 (9th Cir.1990); *Durham Indus. Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir.1980); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985).

The City advances essentially two arguments as to why Quinn's copyright is invalid. First, the City maintains that Quinn's copyright is invalid because he has not complied with all the statutory formalities necessary to register his copyright. Second, the City contends that Quinn's copyright is invalid because LMS is not copyrightable material.

### 1. Did Quinn Appropriately Register LMS With The Copyright Office?

In registering an unpublished work with the United States Copyright Office, one *complete* copy or phonerecord of the work must be deposited along with the application. 17 U.S.C. § 408, 37 C.F.R. § 202.20(c)(I). The City insists that Quinn did not file a complete copy of LMS, but only submitted 13% of the program. As a result of his failure to file a complete copy, the City asserts that Quinn's copyright is invalid.

This court finds that Quinn did file a complete copy of LMS with the United States Copyright Office. Along with his application, Quinn filed the first and last 25 pages of the source code of LMS. *See* Exhibit 8 of Defendant's Exhibit List submitted as part of its motion for summary judgment. This is all that he was required to file. Section 202.20(c)(2)(vii) of the Code of Federal Regulations, which governs the filing of deposit copies for computer programs, states:

(A) For published or unpublished computer programs, [the deposit shall consist of] one copy of identifying portions of the program, reproduced in a form visually perceptible without the aid of a machine or device, either on paper or in microform. . . .

(D)(1) *Identifying portions* shall generally mean either the first and last 25 pages or equivalent units of the work if reproduced on paper or in microform.[13]

In short, this court rejects the City's argument that Quinn failed to register a complete copy of his work. It is the finding of this court that Quinn did file a complete copy of his work.[14]

---

**13.** The City originally cited *Fonar v. Magnetic Resonance Plus, Inc.,* 920 F.Supp. 508 (S.D.N.Y. 1996), to support its position that Quinn's filing in insufficient. Yet *Fonar* has recently been vacated, and hence the City no longer relies on this case.

**14.** Plaintiff has submitted the affidavit of William J. Schramm, who avers that, based on his expertise as an intellectual property lawyer and his dealings with the United States Copyright Office, the Deposit Copy submitted for LMS complies with the Office's requirements and regulations. This court need not, and does not, consider

## 2. Is LMS Copyrightable Material?

The City also asserts that Quinn's copyright is invalid because LMS is not copyrightable material. According to the City, the Copyright Act extends no protection to Quinn's computer program because the same is not an "original work of authorship."

■ Section 102(a) of the Copyright Act, 17 U.S.C. § 102(a) provides:

(a) Copyright protection subsists, in accordance with this title, in *original works of authorship* fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

(1) literary works; [15]

(2) musical works, including any accompanying words;

(3) dramatic works, including any accompanying music;

(4) pantomines and choreographic works;

(5) pictorial, graphic, and scuptural works;

(6) motion pictures and other audiovisual works;

(7) sound recordings; and

(8) architectural works.

(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.[16]

(emphasis added).

Consistent with § 102, the Supreme Court has recognized that to qualify for copyright protection, a work must be original to the author. *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991) (citing *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 555, 105 S.Ct. 2218, 2227–28, 85 L.Ed.2d 588 (1985)). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied

Schramm's affidavit in ruling on this issue. This court need only review the Deposit Copy submitted by Quinn as well as the plain language of 37 C.F.R. § 202.20(c)(2)(vii) in ruling on the issue.

15. Section 101 of the Copyright Act defines "literary works" as "works other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.S.C. § 101. A computer program, which is defined by Section 101 of the Copyright Act, 17 U.S.C. § 101, as "set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result" is classified as a "literary work" for purposes of Section 102(a) of the Copyright Act. *Whelan Assoc. v. Jaslow Dental Laboratory,* 797 F.2d 1222, 1234 (3rd Cir.1986) (citing H.R.Rep. No. 1476, 94th Cong., 2d Sess. 54, *reprinted in* 1976 U.S.Code Cong. & Ad. News, 5659, 5667). *See also Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1249 (3rd Cir.1983) ("a computer program, whether in object code or source code, is a 'literary work' and is protected from unauthorized copying, whether from its object or source code version.") *cert. dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984); *Lotus Dev. Corp. v. Paperback Software Int'l.,* 740 F.Supp. 37, 45 (D.Mass.

1990). *See also Digital Communications Assocs., Inc. v. Softklone Distrib. Corp.,* 659 F.Supp. 449, 454–55 (N.D.Ga.1987).

16. See also 37 C.F.R. § 202.1, which provides:

The following are examples of works not subject to copyright and applications for registration of such works cannot be entertained:

(a) Words and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents;

(b) Ideas, plans, methods, systems, or devices, as distinguished from the particular manner in which they are expressed or described in a writing;

(c) Blank forms, such as time cards, graph paper, account books, diaries, bank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information;

(d) Works consisting entirely of information that is common property containing no original authorship, such as, for example: Standard calendars, height and weight charts, tape measures and rulers, schedules of sporting events, and lists or tables taken from public documents or other common sources.

(e) Typeface as typeface.

from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 345, 111 S.Ct. at 1287 (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A][B] (1990)). Indeed, the requirement of an original expression "is the very 'premise of copyright law.'" *Feist*, 499 U.S. at 347, 111 S.Ct. at 1288.[17]

Apparently, the core of the parties' dispute turns on the issue of whether Quinn's efforts in writing LMS rise to a sufficient level of creativity to qualify for copyright protection. Quinn states that he used Professional File to "write" the computer code that embodies LMS. Quinn is seemingly arguing that he used Professional File in the same way a computer software developer would use development software to write a computer program. Essentially, Quinn contends that he used Professional File as a tool to "write" LMS.

The City, on the other hand, argues that Quinn did not "write" LMS in any real sense. The City argues that LMS is just an application of Professional File and that Professional File is the real software behind LMS. Put another way, the City asserts that LMS is nothing but Professional File wrapped up in a different package. According to the City, Quinn's contributions in making LMS were simply to customize the user-interface of Professional File in order to adopt it for use as a case management system.[18]

This dispute between Quinn and the City is likely to become a fertile ground for future copyright litigation. As computer software becomes more powerful and easy to use, lay persons are more able to customize software for their specific purposes. To use a familiar computer application as an example, consider the following. If a computer user writes a spreadsheet in Microsoft Excel which will take data and compute the user's tax liability, one might argue that, in such a situation, the user's spreadsheet would not be copyrightable—it is merely a use of Excel. It may be

fairly argued by another, however, that the spreadsheet could rise to the level of creativity and originality to qualify for copyright protection.

■ At this time, there is a genuine issue of material fact as to whether LMS is a copyrightable work and thus this court must deny the City's motion for summary judgment. Specifically, there are serious questions as to what LMS is, how LMS operates, and how Quinn created it. Neither party has adequately explained what LMS is and how LMS operates. Indeed, this court has only a vague idea of how LMS operates which it garnered from reading the briefs' cursory explanations concerning the capabilities of LMS and from reviewing the Deposit Copy attached as Exhibit 8 to the City's Motion for Summary Judgment. Likewise, at this stage of the proceedings, there are many questions as to how, precisely, Quinn created LMS. For instance, the City has not provided this court with particularly helpful evidence as to how it believes LMS was created. The City has merely provided this court with a copy of selected portions of the Professional File's User's Manual for this court to review, assuming, rather erroneously, that this court has the experience to assimilate the information therein without any supplemental explanation.[19] Moreover, assuming this court could fully understand exactly how Professional File operates from a review of the Manual alone, the City's mere production of the Manual does not establish that Quinn used Professional File in the manner described in the Manual when he created LMS. In the same vein, Quinn's explanation of how he created LMS is not particularly revealing. It lacks the detail necessary to decide this issue. Once again, for all the reasons just stated, this court finds a genuine issue of material fact as to whether LMS is copyrightable work, and accordingly, the City's

---

17. Not only is it required by the Copyright Act, but it is also "a constitutional requirement." *Id.* at 346, 111 S.Ct. at 1287–88.

18. The City also contends that LMS is a mere bundle of forms and that forms are not copyrightable. However, in this case, the forms

Quinn created in LMS do have logic behind them.

19. Also, a copy of Professional Write which this court could run in conjunction with reading the Manual would be helpful.

motion for summary judgment will be denied.[20]

### D. Is Quinn Entilted to Statutory Damages and Attorneys Fees?

The City claims that Quinn is not entitled to recover statutory damages or attorney fees. This court will defer ruling on this issue until after it decides the issue of whether there has been infringement.

### ORDER

**IT IS HEREBY ORDERED** that the CITY OF DETROIT'S motion for summary judgment is DENIED.

**IT IS FURTHER ORDERED** that JOHN P. QUINN's motion for partial summary judgment is GRANTED. It is the finding of this that the CITY OF DETROIT does not own the copyright pursuant to the work made for hire provisions of the Copyright Act of 1976.

**IT IS FURTHER ORDERED** that the motion to strike affidavits filed by the CITY OF DETROIT is DENIED.

**SO ORDERED.**

---

**20.** As stated *supra,* note 4 at p. 1047 of this opinion, at the present time this court is not addressing the second element of Quinn's infringement claim, that being whether defendant unauthorizedly copied original elements of Quinn's work. The parties have not presented arguments regarding this second element, or if they have, they have done so in a very cursory and unhelpful fashion. Yet this court does recognize that in ruling on this issue of "copying" in the future, it will have to engage in the task of segregating the protectible elements of LMS from the unprotectible elements of that program. The City can only be held liable for unlawfully appropriating the *protected* portions of LMS. This task of distinguishing the protectible from unprotectible portions of LMS may prove difficult. While it is well-settled that a computer "program's source code, written in conventional human language and symbols" as well as its "object code, written in machine readable binary language," are both protectible, *Digital Comm. Assoc., Inc. v. Softklone Dist. Corp.*, 659 F.Supp. 449, 454–55 (N.D.Ga.1987), the law is fuzzy as to what other literal and non-literal elements of a computer program (e.g., structure, sequence and overall structure of the program, screen displays, flow charts, user interface) are protectible.