Ulrich **GENZMER**, Plaintiff,

v.

**PUBLIC HEALTH TRUST OF MIA-MI–DADE COUNTY d/b/a Jackson Memorial Hospital**, Defendant.

Nos. 01–1041–CIV, 01–1041–CIV.

United States District Court, S.D. Florida.

Aug. 1, 2002.

Bradley J. Gross, Miami, FL.

Richard B. Rosenthal, Miami, FL.

*ORDER ON PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT*

GOLD, District Judge.

**THIS CAUSE** is before the court upon the motion for summary judgment (DE

# 38) filed by the plaintiff, Ulrich Genzmer ("Genzmer"), and the cross motion for partial summary judgment (DE # 42) filed by the defendant, Public Health Trust of Miami–Dade County ("the Trust"). This case involves a dispute between the plaintiff and his former employer over the ownership of a computer program that the plaintiff designed during the time he was employed by the defendant. Genzmer has filed a four-count complaint against the Trust alleging as follows: count I, copyright infringement; count II, copyright infringement; count III, copyright infringement; and count IV, breach of contract[1]. The Trust has filed a counterclaim against Genzmer for declaratory and injunctive relief for copyright infringement. The court has federal question subject matter jurisdiction over this case because it involves the interpretation and application of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* Each party requests summary judgment on the limited issue of ownership of the computer program. The court heard oral argument on the parties' motions on July 26, 2002. After carefully considering the pleadings, evidence, and arguments of counsel, the court denies the plaintiff's motion for partial summary judgment and grants the defendant's cross-motion for partial summary judgment.

## The Undisputed Facts and Procedural History[2]

On July 1, 1996, Genzmer began work as a full-time fellow in the Pulmonary and Critical Care Department ("the Department") at Jackson Memorial Hospital ("JMH"). Genzmer's position was identified as a PGY6 level, which means that he received a yearly salary at the six-year post-graduate level, irrespective of the hours he actually worked. (Genzmer Depo., Ex. 1 at 13). Baier was the Director of the Department and Genzmer's immediate supervisor. Genzmer's duties as a fellow were described in a manual provided to the fellows. The job description included instructing house staff on pulmonary and critical care medicine, taking care of patients, taking progress notes, ordering treatments, and conducting research projects related to the field of pulmonary and critical care medicine. Additionally, the manual stated, "The fellows will acquire skills required to organize, administer, and direct a critical care unit, and to work effectively as a member of a multidisciplinary team." (Def.Ex. 2 at 2). Genzmer's job description did not contain any references to computers or computer programing nor was computer programing experience a prerequisite to Genzmer's employment. (Baier Depo. at 45–46; Def. Ex. 2).

All fellows, including Genzmer, were required to complete approximately six months of research during their employment with the Department. (Def.Ex. 2 at 16). The employment manual states that the responsibilities of the research fellows "is original pulmonary research under the supervision of an attending or full-time Ph.D." (Def.Ex. 2 at 16). According to

---

1. Genzmer inadvertently labeled the fourth count of his complaint as "count V". For purposes of this order, "count V" is relabeled "count IV".

2. In support of his motion for summary judgment, the plaintiff has filed his own deposition and the deposition of his supervisor, Josef Baier. Additionally, the plaintiff has filed a statement of undisputed facts pursuant to Southern District of Florida Local Rule 7.5.

In its cross motion, the Trust relies on Genzmer's and Baier's depositions, but it also has filed Baier's affidavit, excerpts from Genzmer's employment record, a manual on Genzmer's fellowship program, and excerpts from the depositions of Adam Wanner and Elio Donna. Additionally, the Trust has submitted a Local Rule 7.5 statement. The following facts are derived from the parties' Local Rule 7.5 statements.

Baier, "There is a myriad of activities that may comprise the 'research' component of the Fellowship program through JMH." (Baier Affid. at 2–3). These activities range from a fellow working with high tech equipment, gathering articles or studies from the library, reviewing literary materials in a fellow's own home, or formulating administrative materials designed to improve the efficiency or effectiveness of patient care at JMH. (Baier Affid. at 2–3). The Division Chief has confirmed that fellows have been required to program computers as part of their duties. (Wanner Depo. at 28–29).

During Genzmer's research period, Genzmer developed the software for a program to computerize the Department's consultation reports. (Genzmer Depo. at 100).[3] Prior to the development of the software, the Department completed all patient consultation reports by hand. It is undisputed that Genzmer wrote the program, at least in part, on his own time, during nonbusiness hours, and using his home computer. (Genzmer Depo. at 88, 92–93, 98, 132–33; Baier Depo. at 51). It is unclear whether Genzmer came up with the idea of computerizing consultation reports on his own or whether Baier suggested this to him as part of his research project, but it is undisputed that Baier and Genzmer had discussions about the computer program as it was being developed by Genzmer. Baier avers that he approved Genzmer's development of the computer program as part of his research assignment because he knew Genzmer had experience with computers, and, without this assignment, Genzmer would have nothing to do for the remainder of his research period. (Baier Affid. at 2).

It is undisputed that Genzmer solely determined the programming language used to create the software and how the software should operate. (Genzmer Depo. at 92–93, 98; Baier Depo. at 51, 97–98). Baier did have input, however, as to the final appearance of the reports generated by the software. (Genzmer Depo. at 94–95, 99, 131–32; Baier Depo. at 53). For example, Baier referred Genzmer to preprinted forms used by JMH, told Genzmer how the finished product should look, and directed him to add and delete certain items in the final forms. (Baier Affid. at 2; Baier Depo. at 53). Baier admits that he was not interested in how Genzmer went about achieving the desired result; rather, he was interested only in obtaining the outcome of computerized consultation reports. (Baier Depo. at 59). Although Genzmer developed the computer program primarily in his home, he conducted the second phase, or the test phase, of the program's development on JMH pulmonary department computers. (Genzmer Depo. at 102). As a result of his observations during the test phase, Genzmer made some alterations to the software to adapt the program to JMH's needs. (Genzmer Depo. at 96, 101–102).

From the beginning of Genzmer's employment in 1996, he began to receive negative employment evaluations. On February 21, 1997, he was placed on internal probation. (Def.Ex.4). These evaluations began to improve at around the same time that Genzmer completed the computer program. Whereas Genzmer previously had been criticized as "reluctant to accept added clinical responsibilities when the need arises," his May 1998 evaluation noted his work on a research assignment: "Dr. Genzmer is presently on research assignment. His work so far shows promise. Mentioned by the faculty were his excellent technical skills.... Dr. Genzmer significantly facilitated the routine of the

---

**3.** This program, which Genzmer named MedicalQuickForms, is comprised of two parts, QuickBronch and QuickConsult. (Genzmer Depo. at 54).

pulmonary service by voluntarily computerizing bronschoscopy reports." (Def.Ex.9). Genzmer has not shown that the assignment referred to in this evaluation is anything other than the development of the software at issue in this case. In November of 1998 his evaluation stated, "[A]lthough there occasionally seems to be some differences of opinion Dr. Genzmer has been able [to] adapt better to the system. In addition, Dr. Genzmer took the initiative and computerized the consultation reports used on the JMH Service. Both faculty and fellows consider this a major contribution to the program." (Def.Ex.10).

Genzmer eventually loaded the software into the Department's computers, after showing the program to Baier and obtaining his approval. (Baier Affid. at 2). On May 26, 1999, Genzmer submitted the software to the United States Copyright Officer in order to obtain copyright registration. (Genzmer Depo. at 107, 142). Genzmer eventually obtained a United States copyright in the software under registration number TX 4–990–146. (Genzmer Depo. at 142, Ex. A). Genzmer placed notices of his copyright in numerous places throughout the visual display and the source code of his computer program, such as on the splash screen that was displayed each time the program was run and at the bottom of every "help" window. (Genzmer Depo. at 133–35; Baier Depo. at 73, 77). Neither Baier, JMH, nor the Trust ever filed an objection or notice with the United States Copyright Office related to the software.

Genzmer's fellowship ended in June or July of 1999. On July 15, 1999, Genzmer's program became inoperable, as Genzmer had programmed a "bug" to disable the software after the termination of his employment. Upon the termination of his fellowship, Genzmer demanded that he receive payment for the Department's use of the software, but the Department refused. Genzmer filed his complaint in this court on March 15, 2001.

On April 15, 2002, the court granted the parties' motion to bifurcate this case into two phases. The order was based upon the parties' representation that such a procedure was likely to result in the amicable settlement of this case. As proposed by the parties, during the first phase, the court is to determine the owner of the computer program's copyright.[4] During the second phase, the issue of damages will be addressed. This case currently is at the first phase, as the parties' cross motions for summary judgment request that the court determine the owner of the software's copyright. During the oral argument on summary judgment, the court discussed with the parties the procedures to be followed during the second phase of this case. Based upon the parties' representations, the court has determined that discovery must be conducted on the issue of damages, and the amount of damages, if any, will be determined either on summary judgment or following a bench trial.

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require

---

**4.** Each of the parties has filed a written notice of waiver of its right to trial by jury on this issue.

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. Sept. 1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Tyson Foods, Inc.,* 121 F.3d at 646. Once the moving party has established the absence of a genuine issue of material fact, to which the nonmoving party bears the burden at trial, it is up to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Issues of fact are genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party. *See Anderson,* 477 U.S. at 247–51, 106 S.Ct. at 2510–11. In determining whether to grant summary judgment, the district court must remember that, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* 477 U.S. at 255, 106 S.Ct. at 2513.

### *Analysis*

■ The issue to be decided in this summary judgment is the determination of who owns the copyright to the software program developed by Genzmer. It is undisputed that Genzmer has obtained a certificate of registration with the Register of Copyrights for the computer program. Under 17 U.S.C. § 410(c), such a certificate is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate". *See also Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1541 (11th Cir.1996) (quoting 17 U.S.C. § 410(c)); *Warren v. Fox Family Worldwide, Inc.,* 171 F.Supp.2d 1057, 1066 (C.D.Cal.2001) (stating that existence of certificate of registration creates rebuttable presumption of copyright ownership); *Yamate USA Corp. v. Sugerman,* No. 89–763, 1991 WL 274854 *5 (D.N.J.1991). As such, the existence of the certificate shifts the burden to the Trust to overcome the presumption of the validity of Genzmer's copyright in the software. *See Ent. Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1217 (9th Cir.1997); *Bateman,* 79 F.3d at 1541; *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1487 (10th Cir.1993).

The Trust contends that, despite the existence of the certificate, it is the owner of the software because the computer program constitutes a "work made for hire". The Copyright Act provides that the rights in a work initially vest in the author of the work. *See* 17 U.S.C. § 201(a). There is an exception to this rule if the work was made for hire. The Copyright Act states:

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C. § 201(b). The Act also defines a "work made for hire" as "a work prepared by an employee within the scope of his or her employment". 17 U.S.C. § 101; *see also LaJoie v. Pavcon, Inc.,* 146 F.Supp.2d 1240, 1246 n. 5 (M.D.Fla.2000) (explaining work made for hire under Copyright Act). The narrower issue in this case, therefore, is whether the computer program created by Genzmer is a work made for hire. If it is, then the Trust is correct that it is the owner of the copyright. If the software was not a work for hire, then Genzmer is the rightful owner.

■ The parties are in agreement as to the standard that governs this inquiry. There are two elements to the work for hire definition: (1) the author must be an

employee, and (2) the work must be prepared within the scope of the servant's employment. It is undisputed that Genzmer was an employee of the Trust during the time he created the software. As such, only the second element is at issue. Because Genzmer's registration of the software creates a presumption in his favor, the burden lies with the Trust to establish that Genzmer created the program within the scope of his employment. Such a burden can be met at the summary judgment stage if there is no genuine issue of material fact as to the applicability of the work for hire doctrine. *See Okl. Natural Gas Co. v. LaRue,* Nos. 97–6093, 97–6224, 97–6087, 1998 WL 568321 *3 (10th Cir. Sept.1, 1998); *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1086 (9th Cir.1989).

■ In *Community For Creative Non-Violence,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), the United States Supreme Court instructed that general common-law agency principles, as defined in the *Restatement,* govern the resolution of whether an employee has created a work within the scope of his or her employment. *Id.* at 739–40, 109 S.Ct. 2166 (citing *Restatement (Second) of Agency* § 228). All other courts that have addressed this question have applied the *Restatement* to the inquiry under 17 U.S.C. § 101, which defines a work for hire as one performed within the scope of an employee's employment. *See, e.g., Avtec Sys., Inc. v. Peiffer,* 21 F.3d 568, 571 (4th Cir.1994).

■ Under section 228 of the *Restatement,* conduct lies within the scope of a servant's employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master." *Restatement (Second) of Agency*

§ 228; *see also Peiffer,* 21 F.3d at 571 (quoting *Restatement* ); *Roeslin v. District of Columbia,* 921 F.Supp. 793 (D.D.C.1995) (same). Courts interpret this test as conjunctive. That is, the party attempting to establish that the work was made for hire must satisfy all three elements. *See Roeslin,* 921 F.Supp. at 798 (citing *Avtec Sys.,* 21 F.3d at 571–72); *City of Newark v. Beasley,* 883 F.Supp. 3, 8 (D.N.J.1995). Although both parties in this case have presented persuasive arguments in support of their positions, upon weighing the undisputed evidence, the court concludes that the Trust has met its burden in establishing that the software program was a work for hire.

The first requirement in the *Restatement* asks whether the work is of the kind the employee was hired to perform. Comment b in section 229 explains this requirement:

> An act may be incidental to an authorized act, although considered separately it is an entirely different kind of act. To be incidental, however, it must be one which the servant is employed to perform. It must be within the ultimate objective of the principal and an act which it is not unlikely that such a servant might do. The fact that a particular employer has no reason to expect the particular servant to perform the act is not conclusive.

Genzmer contends that the Trust cannot satisfy this element of the *Restatement* test because his work description does not mention computers, and computer skills were not a prerequisite of his employment. In support of his argument, Genzmer relies on *Roeslin v. District of Columbia,* 921 F.Supp. 793 (D.D.C.1995)[5], where the court found that the software at issue was not a work for hire because "developing

---

**5.** No reported decision within the Eleventh Circuit has applied the work for hire analysis that governs this case. For this reason, the court and the parties must look to the decisions of other district and circuit courts.

software is not the kind of work plaintiff was employed to perform. Plaintiff was hired as a labor economist, not as a computer programmer." *Id.* at 798.

Although it is true that the plaintiff in this case was hired as a doctor, not as a computer programmer, it does not necessarily follow that writing a computer program is not the type of work Genzmer was employed to perform. The instant case is distinguishable from *Roeslin* and the other cases cited by Genzmer because, as part of his employment, Genzmer was required to undertake a research assignment that encompassed "a myriad of activities". (Baier Affid. at 2–3). The unrefuted evidence shows that, at times, such research has included the drafting of computer programs. (Wanner Depo. at 28–29). Genzmer's job description also can be interpreted to include the development of the computer program at issue, as it stated that fellows would acquire "skills required to organize, and administer, and direct a critical care unit". (Def.Ex. 2 at 2). Organizing information into a manageable form fall under this description. Additionally, once Genzmer began to develop the software, he apprized his supervisor, Baier, about his activities, and Baier provided Genzmer with guidance and praise. This is in direct contrast to the situation in *Roeslin*, where the court found that the development of a computer program was not the type of task the plaintiff was hired to perform because, among other reasons, the plaintiff's supervisor actually discouraged him from developing the software it later claimed was work made for hire. *See id.*, 921 F.Supp. at 798; *see also Beasley*, 883 F.Supp. at 8 (stating that employer's control over project is factor in determining whether project was type of work plaintiff is hired to perform and finding that employer did not satisfy this element where he had no idea that plaintiff was developing computer program).

*Miller v. CP Chemicals, Inc.*, 808 F.Supp. 1238 (D.S.C.1992), which is factually similar to the instant case, applied comment b from section 229 of the *Restatement.* In *Miller,* the court held that a computer program designed by an employee for use in his employer's laboratory was created within the scope of his employment. *Id.* at 1244. The plaintiff in *Miller* was a laboratory supervisor, not a computer program designer. *Id.* at 1240. Like Genzmer, the plaintiff was hired, among other reasons, to organize and update the laboratory. *See id.* at 1243. The court found that the development of the computer program satisfied the first requirement of the *Restatement* test because it was "within the ultimate objective of the principal and an act which is not unlikely that such a servant might do." *See id.* (citing *Restatement (Second) of Agency* § 229 cmt. b). Similarly, in this case, Genzmer's organization of Department information into a computer program is incidental to his authorized acts of completing a research program and organizing and directing the Pulmonary Care Department, tasks Genzmer was directly hired to perform.[6]

The second requirement of the *Restatement* test asks whether the employee's work occurred substantially within the authorized time and space limits. Genzmer contends that the Trust cannot satisfy this requirement because he wrote the software at issue in his home, using his home

---

**6.** The fact that Genzmer received positive employment reviews as a result of his development of the computer programs also is strong support for the Trust's contention that the work was of the kind Genzmer was employed to perform. Prior to the development of the software, Genzmer was placed on probation, but the evidence shows that Genzmer's work on the software was a significant factor in improving his employment record. (Def.Ex.4, 9, 10).

computer, during off-duty hours. He compares his case to *Quinn v. City of Detroit*, 988 F.Supp. 1044 (E.D.Mich.1997), where the court held that the defendant had not satisfied the second step of the test because the plaintiff had developed the software at issue on his own time, using a software package he bought with his own funds. *See id.* at 1051. Like the plaintiff in *Quinn*, Genzmer developed the computer program on his own time, but, unlike that plaintiff, Genzmer was a salaried employee involved in a research project. It is undisputed that, during the research period, fellows normally would not be in JMH seeing patients. Rather, they would be working on their projects primarily outside of their department, such as by conducting research in the library. Because Genzmer was completing most of the computer program during his research phase, it follows that he would not have developed the software, or performed any other aspect of his research project, in the Department. What matters is that Genzmer performed the work during the time period in which he was employed by the Trust to complete the research program. *See Miller*, 808 F.Supp. at 1243 (finding that employer satisfied second requirement because "the work was performed during the time period in which he was employed by CP"); *In re Simplified Info. Sys., Inc.*, 89 B.R. 538, 541 (W.D.Pa.1988) (stating that work for hire doctrine is not avoidable simply because work is performed at different location on non-employment hours) (citation omitted); *see also Vanderhurst v. Colorado Mtn. College Dist.*, 16 F.Supp.2d 1297, 1307 (D.Col.1998) (finding that professor's outlines were work for hire where, although he prepared them on his own time and with his own materials, outlines were incidental to his employment and a method of carrying out employment's objectives); *Avtec Sys., Inc. v. Peiffer*, No. 94–2364, 1995 WL 541610 *4 (4th Cir. Sept.13, 1995) (stating that employer could not satisfy second element where plaintiff was not salaried and program was not directly related to task he was performing during duty hours).

It also is important to note that Genzmer completed the second aspect of the computer programming at JMH, in the Department, using Department computers. Genzmer has testified that, although he wrote the computer program in his home, he tested it by conducting the beta phase in the Department. As a result of the observations he made during this phase of the software design, he performed some alterations to the program. (Genzmer Depo. at 101–02). This fact also supports the conclusion that Genzmer performed his work within the authorized time and space limits.

The final step of the *Restatement* test asks whether the work, is motivated, "at least in part", by a purpose to serve the master. Significantly, the *Restatement* does not require that the servant's only motivation be to help his or her employer; the motivation need only be partial. *See Beasley*, 883 F.Supp. at 9 (stating that employer need only show that employee's motivation as "appreciably" motivated by desire to further employer's goal).[7] The only proof that Genzmer has submitted in support of his contention that the development of the software was self-motivated is his own testimony that he decided to create the software *sua sponte*. *Compare Roeslin*, 921 F.Supp. at 798 (finding that plaintiff's creation of computer program was self-motivated where plaintiff testified that he created program to develop job opportunities for himself and to prove it

7. Genzmer has not cited, nor has the court's independent research revealed, any cases where courts have required a showing greater than partial motivation by a an employee to serve an employer.

could be done, and where defendant actually tried to dissuade plaintiff from developing program). In contrast, there is substantial evidence to support the Trust's position that Genzmer's software also was actuated to serve the Trust. Genzmer tailored the program to fit JMH's needs. This is established by Baier's unrebutted testimony that he referred Genzmer to preprinted forms used by JMH to implement into the software, told Genzmer how the finished product should look, and directed him to add and delete certain items in the final form. (Baier Affid. at 2; Baier Depo. at 53). Once complete, the program was used in the Department to computerize reports, and it is undisputed that the program significantly assisted organizing information. Finally Genzmer's employer recognized the significance of the program to the Department when it stated that Genzmer "significantly facilitated the routine of the pulmonary service by computerizing bronchoscopy reports" and that his initiative in computerizing reports was a "major contribution to the program". (Def.Ex.9, 10). *See Miller,* 808 F.Supp. at 1243 (holding that employer satisfied third element because computer program was created to simplify plaintiff's job and eliminate errors, employer expressly asked plaintiff to continue to develop computer programs, and each computer program was tailored to defendant's products). *Compare Peiffer,* 1995 WL 541610 at *5 (stating that employer could not satisfy third element where computer program was not related to any project plaintiff was to perform for employer, plaintiff was not working to improve his own or employer's job efficiency, and plaintiff was not receiving direction from employer). All of this indicates that Genzmer was motivated, at least in part, to assist the Department.

In sum, the court finds that the Trust has satisfied all the requirements of section 28 of the *Restatement.* It has shown that the software created by Genzmer was the kind of work he was hired to perform, that he created the program during work hours, and that he was motivated by a desire to serve the Trust. The fulfillment of these elements compels the conclusion that the software developed by Genzmer was a work made for hire under 17 U.S.C. § 101, and, under 17 U.S.C. § 201(a), Genzmer is not entitled to the copyright. Accordingly, it is hereby:

**ORDERED AND ADJUDGED THAT:**

1. Genzmer's motion for partial summary judgment (DE # 38) is DENIED.

2. The Trust's cross-motion for partial summary judgment (DE # 42) is GRANTED.

3. A telephonic status conference is hereby set for **Friday, August 16, 2002, at 5:00 p.m.** The court will initiate the call. Prior to this conference, the parties are to meet in order to discuss a discovery and pretrial schedule. During the conference, the parties will inform the court of dates for the close of nonexpert and expert discovery, filing dispositive motions, and trial.